UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) PRODUCTS LIABILITY LITIGATION | * | MDL NO. 2592 |
| | * | SECTION L |
| | * | |
| | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAG. JUDGE NORTH |
| ************************************************ | * | |

**THIS DOCUMENT RELATES TO:**
*Robert Murphy et al. No. 16-1066*

## ORDER & REASONS

Before the Court is a Motion for Remand filed by Plaintiffs Robert Murphy et al. R. Doc. 3035. Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

### I.   BACKGROUND

This matter arises from damages Plaintiffs claim to have suffered from the manufacture, sale, distribution, and/or use of the medication known as Xarelto, an anti-coagulant used for a variety of blood-thinning medical purposes. The Plaintiffs have filed suits in federal courts throughout the nation against Defendants, Bayer Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare AG, Bayer Pharma AG, and Bayer AG (collectively, Bayer), Janssen Pharmaceuticals, Inc., Janssen Research & Development, LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, Janssen). The Plaintiffs specifically allege that they or their family members suffered severe bleeding and other injuries due to Xarelto's allegedly inadequate warning label, as well as Xarelto's purported lack of a requirement for regular blood monitoring.

The Judicial Panel on Multidistrict Litigation determined that the Plaintiffs' claims involved common questions of fact and that centralization under 28 U.S.C. § 1407 would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  Therefore, on December 12, 2014, the Judicial Panel on Multidistrict Litigation consolidated the Plaintiffs' Xarelto claims into a single multidistrict proceeding ("MDL 2592"). MDL 2592 was assigned to Judge Eldon E. Fallon of the United States District Court for the Eastern District of Louisiana to coordinate discovery and other pretrial matters in the pending cases.  Subsequent Xarelto cases filed in federal court have been transferred to this district court to become part of MDL 2592 as "tag along" cases.  The Court has appointed committees to represent the parties, and discovery has commenced.

Plaintiffs Robert Murphy, individually and as legal representative of the estate of Kathleen Murphy (deceased), Scott Murphy, Christine Murphy, and Brian Murphy (collectively, "the Murphy Plaintiffs") bring suit regarding the death of Kathleen Murphy following the implant of an intracranial, intradural shunt on September 26, 2013.  R. Doc. 3035-2 at 13. According to the Murphy Plaintiffs, Ms. Murphy appeared "alert" and "cooperative" when she was transferred post-operation to Reliant Rehabilitation Hospital, Mid-Cities, LP d/b/a/ Reliant Rehabilitation Hospital Mid-Cities ("Reliant") on September 28, 2013.  R. Doc. 3035-2 at 13. That same day, Ms. Murphy's doctor, Jerome Kane, M.D., prescribed her Xarelto "according to the standing order for DVT prophylaxis."  R. Doc. 3035-2 at 13.  Ms. Murphy took her first dose of Xarelto on September 29, 2013, and continued receiving the medication until discharged by Reliant on October 3, 2013.  R. Doc. 3035-2 at 13.  Shortly after returning home, Ms. Murphy's condition rapidly deteriorated, and she was rushed to the hospital.  R. Doc. 3035-2 at 13.  A CT scan revealed that Ms. Murphy had suffered a large, acute intraventrical hemorrhage with

additional parenchymal hemorrhage surrounding the right occipital jejunostomy catheter. R. Doc. 3035-2 at 13.  Ms. Murphy passed away approximately two weeks later from a respiratory failure related to her intracranial hemorrhage.  R. Doc. 3035-2 at 14.

The Murphy Plaintiffs bring suit against Bayer and Janssen on a number of products liability theories, including strict products liability, breach of implied warranty, negligence, negligent misrepresentation, and fraud.  R. Doc. 3035-2 at 17–20.  The Murphy Plaintiffs also claim injury due to the alleged negligence of Dr. Kane and Reliant.  Dr. Kane's negligence allegedly stems from his (1) prescription of Xarelto; (2) failure to accurately assess Ms. Murphy's condition and create a proper medical care plan to meet her needs; and (3) failure to implement a proper care plan for Ms. Murphy.  R. Doc. 3035-2 at 15.  Reliant's negligence is based on Reliant's (1) utilization of Xarelto as part of a standard protocol for a prophylactic anti-coagulation to prevent the development of DVTs in all post-surgery patients; (2) administration of Xarelto to Ms. Murphy; (3) failure to implement a proper care plan for Ms. Murphy; and (4) failure to challenge Dr. Kane's order to administer Xarelto to Ms. Murphy.  R. Doc. 3035-2 at 15–17.

The Murphy Plaintiffs originally filed their state court petition in Texas.  R. Doc. 3035-2 at 4.  At the time of filing, Plaintiffs Robert Murphy and Brian Murphy were citizens and residents of the State of Texas.  R. Doc. 3035-1 at 8.  Defendants to the action included Texas domiciliaries, such as Jerome Kane, M.D., and Reliant Rehabilitation Hospital, Mid-Cities, LP d/b/a/ Reliant Rehabilitation Hospital Mid-Cities ("Reliant").  R. Doc. 3035-1 at 8.  Bayer and Janssen ("the Pharmaceutical Defendants") later removed the case to federal court, asserting that the nondiverse Texas defendants were either fraudulently joined or fraudulently misjoined by the Murphy Plaintiffs to prevent removal.  R. Doc. 3035-1 at 9.

## II.   THE PRESENT MOTION

On April 13, 2016, the Murphy Plaintiffs filed a Motion for Remand.  R. Doc. 3035.  The Murphy Plaintiffs contend that the Court lacks subject matter jurisdiction over their state law claims, and contest the propriety of the Pharmaceutical Defendants' removal to federal court on grounds of diversity jurisdiction.  R. Doc. 3035-1 at 9–10.  The Pharmaceutical Defendants fail to argue that the Murphy Plaintiffs are nondiverse from Dr. Kane or Reliant, so the motion hinges on the propriety of joinder.

### A.  The Murphy Plaintiffs' Motion (R. Doc. 3035)

The Murphy Plaintiffs deny that their claims against Dr. Kane and Reliant are fraudulently joined or fraudulently misjoined to their claims against the Pharmaceutical Defendants.  R. Doc. 3035 at 9, 18.  Beginning with the former, the Murphy Plaintiffs contend that the Pharmaceutical Defendants cannot prove that "there is no possibility that Plaintiffs may recover against Dr. Kane or Reliant Hospital under applicable state law."  R. Doc. 3035 at 9–10.  Turning to the face of the Complaint, the Murphy Plaintiffs aver that the causes of action against Dr. Kane and Reliant are supported by the stated facts as well as the Complaint's language allegedly linking "precise factual allegations to specific violations of the standard of care."  R. Doc. 3035-1 at 12–15.  Specifically, the Murphy Plaintiffs argue that the Complaint shows that a neurosurgery patient such as Ms. Murphy should not have been prescribed or administered any anticoagulant medications, "let alone one which has no approved antidote that could be used in the event a bleed occurred."  R. Doc. 3035-1 at 17.  The Murphy Plaintiffs therefore argue that their claims are properly joined.

The Murphy Plaintiffs attempt to distinguish the precedent cited by the Pharmaceutical Defendants in their Notice of Removal.  R. Doc. 3035-1 at 15.  The Murphy Plaintiffs

specifically target the MDL opinion in *In re Rezulin Products Liability Litigation*. MDL 1348, 2002 WL 31852826 (S.D.N.Y. Dec. 18, 2002). According to the Murphy Plaintiffs, *Rezulin* stands for the proposition that improper joinder may occur where a conclusory complaint fails to give proper notice to a defendant. The Murphy Plaintiffs distinguish their Complaint, arguing that they pled specific causes of action "each of which present[s] a reasonable possibility of holding [Dr. Kane and Reliant] liable for the death of Kathleen Murphy." R. Doc. 3035-1 at 16. The Murphy Plaintiffs also cite a later opinion by the *Rezulin* court which they claim contextualizes the first *Rezulin* opinion as being decided in their favor. R. Doc. 3035-1 at 15–16 (citing *In re Rezulin Prods. Liab. Litig.*, MDL 1348, 2002 WL 548750, at *12 (S.D.N.Y. Apr. 12, 2002)).

Lastly, the Murphy Plaintiffs target the Pharmaceutical Defendants' argument of fraudulent misjoinder. The Murphy Plaintiffs aver that fraudulent misjoinder is a disfavored concept that calls for the severance of claims that lack a true factual nexus. R. Doc. 3035-1 at 18–19. The Murphy Plaintiffs further argue that Rule 21 severance would be inappropriate in this matter, because the joinder of a malpractice claim with a products liability action is not improper in the Eastern District of Louisiana. R. Doc. 3035-1 at 22–24 (citing *Turner v. Ethicon Endo-Surgery*, No. 03-3334, 2003 WL 22872103 (E.D. La. Dec. 2, 2003).

### B. The Pharmaceutical Defendants' Response (R. Doc. 3265)

The Pharmaceutical Defendants begin by arguing that the Court should delay ruling on the present motion until later in the MDL's discovery proceedings. R. Doc. 3265 at 4–6. Defendants place great weight on the nature and purpose of MDLs. According to Defendants, "the efficiencies of coordinated discovery—one of the mandates of the MDL statute and the JPML's order establishing this proceeding—will be lost" if this Court chooses to remand the

present case. R. Doc. 3265 at 5. Defendants cite a Second Circuit concurrence in the *Zyprexa* litigation, and argue that federal judges have recognized an MDL court's discretion to prioritize discovery over jurisdictional matters. R. Doc. 3265 at 5 (quoting *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 127 (2d Cir. 2010) (Kaplan, J., concurring)).

The Pharmaceutical Defendants next argue that Dr. Kane and Reliant were fraudulently joined as defendants, because Plaintiffs have no "reasonable possibility of recovery" against them. *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 515 (5th Cir. 2009). The Pharmaceutical Defendants take the position that the Murphy Plaintiffs' claims against the Pharmaceutical Defendants leave no mechanism for finding liability against Dr. Kane or Reliant. In essence, the Pharmaceutical Defendants aver that the Murphy Plaintiffs' pleaded facts supporting the liability of the Pharmaceutical Defendants nullify their claims of medical malpractice by the parties who prescribed and administered Xarelto.

The Pharmaceutical Defendants next address this Court's discretionary power to sever claims under Rule 21 of the Federal Rules of Civil Procedure. The Pharmaceutical Defendants first argue that the Physician Defendants are not necessary or indispensable parties under Rule 19, and that this provides grounds for discretionary severance. The Pharmaceutical Defendants cite case law suggesting that a doctor and hospital are not necessary parties to claims such as medical products liability actions. R. Doc. 3265 at 11–12 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 5 (1990)). With this in mind, the Pharmaceutical Defendants contend that the efficiency interests of the MDL outweigh the Murphy Plaintiffs' interest in joinder, and that the Court should therefore sever the claims against Dr. Kane and Reliant. R. Doc. 3265 at 11–12.

In the alternative, the Pharmaceutical Defendants argue that the Court should sever on grounds of fraudulent misjoinder, also known as *Tapscott* severance. R. Doc. 3265 at 13 (citing

*Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  The Pharmaceutical Defendants aver that severance on grounds of fraudulent misjoinder is appropriate, because the Murphy Plaintiffs' theories regarding the inadequate testing or concealment of information regarding Xarelto do not arise from the same transaction or occurrence as the medical-malpractice claims. R. Doc. 3265 at 15.

### C.  The Murphy Plaintiffs' Reply (R. Doc. 3293)

The Murphy Plaintiffs timely reply.  The Murphy Plaintiffs first argue that the Pharmaceutical Defendants misrepresent the instant causes of action in their efforts to prove fraudulent joinder.  R. Doc. 3293 at 4–5.  The Murphy Plaintiffs aver that a Texas court could find liability against both parties, because the Murphy Plaintiffs allege that Dr. Kane's and Reliant's liability "is based on their failure to meet the standard of care by prescribing a blood thinner, any blood thinner, to a patient recovering from brain surgery."  R. Doc. 3285-1 at 5. According to the Murphy Plaintiffs, this theory does not stand or fall based on claims of failure to warn or intentional concealment.  R. Doc. 3293 at 5–6.  The Murphy Plaintiffs also aver that they are Rule 19 necessary parties, contending that the Texas and federal courts may create inconsistent judgments by imposing different degrees of liability as to all Defendants.  R. Doc. 3293 at 7–8.

## III.  Law and Analysis

### A.  Applicable Law

The laws of fraudulent joinder, Rule 21 severance, and fraudulent misjoinder are implicated by the parties.  The Court will review each in turn.

#### i.  The Law of Fraudulent Joinder

A party may be fraudulently joined if there is actual fraud in the pleading of jurisdictional facts, or if the plaintiff is unable to establish a cause of action against the non-diverse party in state court.  *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004).  The parties agree that the present motion only concerns the latter form of fraudulent joinder.  District courts engaging in this type of fraudulent joinder inquiry must determine if there is no "reasonable possibility of recovery" against the non-diverse defendants.  *Kling*, 575 F.3d at 515.  In other words, "[i]f there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  When evaluating whether a plaintiff has a reasonable basis of recovery under state law, courts in the Fifth Circuit "conduct a Rule 12(b)(6)-type analysis," examining whether there is a viable state law claim against the non-diverse defendant.  *Smallwood*, 385 F.3d at 573.

    ii. The Law of Rule 21 Severance

Rule 21 of the Federal Rules of Civil Procedure permits a court "at any time, on just terms . . . [to] sever any claim against a party."  Fed. R. Civ. P. 21.  A district court has "broad discretion" to permit or deny Rule 21 severance.  *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000) (citing *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *see also In re Vioxx Prods. Liab. Lit.*, MDL No. 1657, 2008 WL 4681368, at *8 (E.D. La. Oct. 21, 2008).  Numerous grounds for discretionary severance may be proper.  For instance, "the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice."  *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995).  Courts may also consider interests of judicial economy, such as whether identical witnesses or documentary proof support each claim.  *See Adams v. Big Lots Stores, Inc.*, No. 08-4326, 2009

WL 2160430, at *2 (E.D. La. July 16, 2009). The party seeking Rule 21 severance "bears the burden of proving that such action is necessary." *Aspen Tech., Inc. v. Kunt*, No. 4:10-cv-1127, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011) (citations omitted).

    iii. The Law of *Tapscott* Severance

*Tapscott* severance, also known as fraudulent misjoinder, is a doctrine first espoused by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (1995), which allows a court to sever a non-diverse defendant and thereby "exercise diversity jurisdiction based on complete diversity between the plaintiff and defendant, if the claims against other non-diverse defendants are factually and legally unrelated and were joined in the same action [simply] to defeat diversity jurisdiction." *Hospitality Enters., Inc. v. Westchester Surplus Lines Ins. Co.*, No. 11-234, 2011 WL 1303954, at *2 (E.D. La. Mar. 31, 2011). District courts in the Fifth Circuit routinely consider fraudulent misjoinder to be a viable procedural attack, although the Fifth Circuit has not expressly adopted the *Tapscott* doctrine. *See, e.g., id.*; *NGO v. Essex Ins. Co.*, No. 07-7643, 2008 WL 4544352, at *2 (E.D. La. Oct. 9, 2008); *see also In re Benjamin Moore & Co.*, 318 F.3d 626, 630 (5th Cir. 2002) (recognizing the "force" of the fraudulent misjoinder doctrine). "Mere misjoinder" is not sufficient. *Tapscott*, 77 F.3d at 1360. Only "egregious" misjoinder justifies discounting the citizenship of misjoined defendants and finding complete diversity of citizenship. *Id.*; *see also Bienenmy v. Cont'l Cas. Co.*, No. 09-6647, 2010 WL 375213, at *4 (E.D. La. Dec. 13, 2010) ("Even courts that follow *Tapscott* have not applied that case unless the connection between the claims against the individual parties is so tenuous that disregarding the citizenship of the joined parties is just, or when there is no 'palpable connection' between the claims and the parties joined."). While there is some disagreement as to whether state or federal joinder rules determine the propriety of joinder in a removal analysis, courts in

the Eastern District of Louisiana apply state joinder principles. *See Parish v. Exxon Mobile Corp.*, No. 13-6717, 2015 WL 4097111, at *12 (E.D. La. July 7, 2015); *see also Davis v. Cassidy*, No. 11–1563, 2011 WL 6180054, at *2 (E.D. La. Dec. 13, 2011); *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 2407310, at *5 (E.D. La. Aug. 20, 2007).

### B. Discussion

The Pharmaceutical Defendants ask the Court to defer ruling on the instant motion, on the grounds that the interests of the MDL as a whole supersede those of the Murphy Plaintiffs. To promote efficiency, MDL courts are generally "given greater discretion to organize, coordinate and adjudicate [their] proceedings. . . ." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007). Discovery in this MDL is nearly completed now, and several bellwether trials have been scheduled. The Court sees no reason to defer ruling on the present matter. The Court finds the motion well briefed, and at this phase in the litigation the Murphy Plaintiffs may be granted certainty as to their proper forum without prejudicing the discovery timeline of the Xarelto MDL. The Court proceeds to the merits of the motion.

#### i. Fraudulent Joinder

The Pharmaceutical Defendants aver that Dr. Kane and Reliant were fraudulently joined to this action, because the Murphy Plaintiffs' malpractice actions against Dr. Kane and Reliant are precluded by their factual claims concerning the development, marketing, and production of Xarelto. A claim against a non-diverse defendant is fraudulently joined if there is no "reasonable possibility of recovery . . . ." *Kling*, 575 F.3d at 516. The Court's "12(b)(6)-type analysis"

therefore hinges on whether the facts as alleged by the Murphy Plaintiffs are cognizable as malpractice under Texas law. *Smallwood*, 385 F.3d at 573.

The Murphy Plaintiffs' malpractice claims are premised upon Chapter 74 of the Texas Civil Practice & Remedies Code, which provides that:

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13).

Turning to the Complaint, the Murphy Plaintiffs attempt to link their factual allegations to specific violations of Texas standard of medical care.

> a. Defendant Kane departed from the accepted standard of medical care in the following respects, among others:
>     (1) prescribing Xarelto to Kathleen Murphy;
>     (2) failing to accurately assess Kathleen Murphy's condition and create a proper medical care plan to meet her needs; and
>     (3) failing to implement a proper care plan for Kathleen Murphy.
> b. The Hospital Defendants departed from the accepted standard of medical care in the following respects, among others:
>     (1) utilizing Xarelto as part of a standard protocol for a prophylactic anticoagulation to prevent the development of DVTs in all post-surgery patients;
>     (2) administering Xarelto to Kathleen Murphy;
>     (3) failing to implement a proper care plan for Kathleen Murphy; and,
>     (4) failing to challenge Dr. Kane's order to administer Xarelto to Kathleen Murphy.

R. Doc. 3035-1 at 13. In support of these claims and in compliance with Chapter 74.351 of the Texas Civil Practice and Remedies Code, the Murphy Plaintiffs also provide the expert report of Todd J. Swick, M.D. R. Doc. 3035-2 at 61. Dr. Swick opines that Reliant and Dr. Kane knew or

[11]

should have known that an anticoagulant "should not be used in a patient who has undergone instrumentation within the cerebral cortex . . . unless there is an overwhelming reason to use a blood thinner . . . ." R. Doc. 3035-2 at 66. Dr. Swick further opines that no such reason existed on the facts of Ms. Murphy's case. R. Doc. 3035-2 at 66.

As pled in the Complaint, the Murphy Plaintiffs' malpractice claims against Dr. Kane and Reliant "have a reasonable possibility of recovery . . . ." *Kling*, 575 F.3d at 516. The Pharmaceutical Defendants wrongly generalize that the Murphy Plaintiffs' claims against Dr. Kane and Reliant are entirely premised on their knowledge that Xarelto was a dangerous drug. The Murphy Plaintiffs also contend that the anticoagulant regimen prescribed by Dr. Kane and administered by Reliant was itself a deviation from the proper standard of medical care. Expert evidence provided by the Murphy Plaintiffs supports this theory of liability. At the very least, the following two theories of liability are cognizable on the facts pled in the Complaint: (1) the Pharmaceutical Defendants wrongly concealed the dangers of Xarelto; and (2) Dr. Kane and Reliant prescribed and administered Xarelto, even though the use of an anticoagulant was an inappropriate plan of care for Ms. Murphy. Thus, Ms. Murphy's death was plausibly caused by Dr. Kane, Reliant, the Pharmaceutical Defendants, or some combination of the preceding. Because the Murphy Plaintiffs' claims against Dr. Kane and Reliant raise issues of material fact appropriate for trial under Texas law, there is no fraudulent misjoinder.

### ii. Discretionary Severance under Rule 21

Dr. Kane and Reliant are non-diverse and are not fraudulently joined to this action, so unless they can be severed from the case the Court must remand the Murphy Plaintiffs' claims to the Texas state court due to lack of subject matter jurisdiction. Rule 21 of the Federal Rules of Civil Procedure permits a court "at any time, on just terms . . . [to] sever any claim against a

party." Fed. R. Civ. P. 21.  The Pharmaceutical Defendants have cited out-of-circuit case law suggesting that a district court should use its discretionary powers to sever non-diverse malpractice claims from diverse products liability actions.  *See, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015) (citing "different and distinct" standards of care applicable to medical-malpractice and product liability claims as justification to "sever the claims against the two groups of defendants"); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *4 (E.D. Ky. May 28, 2015); *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 3984830, at *4–5 (E.D. Va. Oct. 8, 2010); *DeGidio v. Centocor, Inc.*, No. 3:09-CV-721, 2009 WL 1867676, at *2 (N.D. Ohio June 29, 2009).  But numerous courts have held the opposite and declined to sever non-diverse parties, even where the remaining claims fell within the scope of an MDL.  *See e.g.*, *Saviour v. Stavropoulos et al.*, No. 15-5362, 2015 WL 6810856, at *4–5 (E.D. Pa. Nov. 5, 2015); *Echols v. OMNI Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010); *Ash v. Providence Hosp.*, No. 08-0525-WS-M, 2009 WL 424586, at *9 n.19 (S.D. Ala. Feb. 17, 2009).  The Court looks to controlling precedent to determine whether severance is appropriate in this case.

The Supreme Court has suggested that courts weighing Rule 21 severance "should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation."  *Newman-Green, Inc. v. Alfonzo-Lorrain*, 490 U.S. 826, 837 (1989); *see also Ash*, 2009 WL 424586, at *9 n.19 (citing *id.* at 838). ("The Supreme Court has cautioned that 'creating' federal jurisdiction through the severance procedure should be employed sparingly."). In particular, "[i]t may be that the presence of the nondiverse party produce[s] a tactical advantage for one party or another."  *Newman-Green*, 490 U.S. at 837.

[13]

Only the Murphy Plaintiffs cite on-point case law that is controlling in the Eastern District of Louisiana, and the Court finds helpful the opinion's logic. In *Turner v. Ethicon Endo-Surgery, Inc.*, No. 03-3334, 2003 WL 22872103, at *2 (E.D. La. Dec. 2, 2003), the plaintiffs alleged that Ms. Turner underwent a surgical procedure and later found that a piece of an automated suturing device remained in her abdomen. *Id.* at *1. The plaintiff brought suit against the device manufacturer in state court, and the defendant subsequently removed the case to federal court on grounds of diversity jurisdiction. *Id.* The plaintiffs then amended their petition, adding as co-defendants the treating physician and the hospital where the surgery was performed. *Id.* This act destroyed diversity. *Id.* Nevertheless, this Court held that the joinder of a physician and hospital to a products liability claim was proper under Rule 20(a), and declined to use its discretion to sever the non-diverse defendants. *Id.* at *2. The Court largely based its holding on the grounds that there would be common questions of law and fact to all of the parties to the action, and that the relative liability of the parties was in question. *Id.* at *2. So too here. The Murphy Plaintiffs contend that the Pharmaceutical Defendants, Dr. Kane, and Reliant are each responsible for the death of Ms. Murphy on a variety of theories. Common questions of law and fact link these claims. *See id.* at 2; *see also Donaldson v. Spinal Concepts, Inc.*, *Donaldson v. Spinal Concepts, Inc.*, No. 03-1513, 2003 WL 22175986, at *1–2 (E.D. La. Sept. 19, 2003) (finding proper the joinder of a medical-malpractice action to a products liability action, and subsequently remanding due to lack of diversity). The Murphy Plaintiffs have a strong strategic interest in playing these parties against one another at trial, which weighs against dismissal. *See Newman-Green*, 490 U.S. at 837. Perhaps even more importantly, severance of the claims will force the Murphy Plaintiffs to litigate against the Pharmaceutical Defendants' empty chair at the

state court proceeding.  This would be no simple task.  The Court is hesitant to place the Murphy Plaintiffs in such an untenable position.

Further, the Court is cognizant of the deference owed to a plaintiff's choice of forum, especially where Rule 21 is being used to create jurisdiction rather than preserve it.  "[W]hile Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent."  *See Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (quoting *Sons of the Revolution in N.Y. Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 WL 7004033, at *3 (S.D.N.Y. Dec. 11, 2014)); *see also Ash*, 2009 WL 424586, at *9 n.19.  The Murphy Plaintiffs properly filed their state court action against the Pharmaceutical Defendants alongside two non-diverse defendants, plausibly hoping to defeat diversity.  The Court agrees with those opinions that afford deference to Plaintiff's choice of forum in the context of Rule 21, and thusly weighs the facts.

Standing alone, a plaintiff's strategic interest in trying medical-malpractice claims alongside products liability claims may not be sufficient to override the efficiency interests embodied in MDL proceedings.  Simply put, an MDL court need not look favorably upon a remand motion that is premised on a plaintiff second-guessing the relative greenness of the grass in state and federal court.  But the present motion does not concern a case where the plaintiff chose to split claims against various defendants, some of whom were subject to an MDL, and later sought to escape the MDL by joining non-diverse defendants after the initiation of MDL transfer proceedings.  The Murphy Plaintiffs asserted facially valid products liability and malpractice claims prior to removal, and this MDL's efficiency interests cannot supplant both a

plaintiff's strategic interests in joining defendants as well as deference to a plaintiff's choice of forum. The Court therefore declines to use its discretion to sever the present action.

            iii.   *Tapscott* Severance

Defendants' remaining ground for severance, *Tapscott* severance, hinges on whether "the claims against . . . non-diverse defendants are factually and legally unrelated [to the diverse defendants] and were joined in the same action to defeat diversity jurisdiction." *See Hospitality Enters.*, 2011 WL 1303954, at *2. In other words, the Court must determine if the Defendants were misjoined under state law, and if this misjoinder "border[s] on a sham." *Tapscott*, 77 F.3d at 1360.

The applicable standard for the former part of the test, Texas Rule of Civil Procedure 40, provides that Defendants may be joined together in the same action only if: (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) at least one "question of law or fact common to all of them will arise in the action." Tex. R. Civ. P. 40(a). The failure to satisfy both of these requirements is fatal to joinder. *See Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1322 (S.D. Miss. 2003). Texas state policy encourages the broad joinder of multiple parties in the same action under Rule 40. *See In re E.L.P.*, 636 S.W.2d 579, 581 (Tex. App. 1982); *see also Battison v. City of Electra,* 2001 WL 497769, at *1 (N.D. Tex. May 08, 2001) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, (1966)) (explaining that Federal Rule 20(a) should be interpreted in light of the Supreme Court's instruction that "'joinder of claims, parties and remedies is strongly encouraged'").

Turning to the facts at hand, the causes of action against the Pharmaceutical Defendants, Dr. Kane, and Reliant all derive from a common source: the prescription and administration of

an anticoagulant, Xarelto, following the implant of an intracranial, intradural shunt. Numerous common questions of law and fact exist as to the relative liability of the parties as well as the extent of the Murphy Plaintiffs' damages. *See Turner*, 2003 WL 22872103, at *2; *see also Reuter v. Medtronic, Inc.*, No. 10-3019 (WJM), 2010 WL 4628439, at *5 (D.N.J. Nov. 5, 2010) ("To the extent each Defendant tries to shift liability, the design and manufacture of the product and [the malpractice defendant's] conduct will be central issues."). The aforementioned common factual source and intermingled questions of law and fact are sufficient to classify the Murphy Plaintiffs' claims against Defendants as properly joined under Texas law. As such, there is no fraudulent misjoinder per *Tapscott*, and severance is inappropriate.

## IV. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that the Murphy Plaintiffs' Motion for Remand, R. Doc. 3035, is hereby **GRANTED**.

New Orleans, Louisiana, this 17th day of August, 2016.

_____
UNITED STATES DISTRICT JUDGE